IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


CHARLES JOHNSON, ET AL.,           :
                                   :
          Plaintiffs               :
                                   :
     v.                            :    CIVIL NO. 3:CV-11-565
                                   :
B. HOLLIBAUGH, ET AL.,             :    (Judge Conaboy)
                                   :
          Defendants               :

_____

**MEMORANDUM**
**Background**

Charles Johnson, Robert Kane, and Donald Brown (Plaintiffs) initiated this <u>pro</u> <u>se</u> civil rights action regarding their mutual confinement at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon).

By Order dated October 13, 2011, Kane's incomplete <u>in</u> <u>forma</u> <u>pauperis</u> application was denied and his claims were dismissed without prejudice. <u>See</u> Doc. 19. In addition, a motion for joinder submitted by Inmate Thomas J. Martin was dismissed without prejudice for his failure to either pay the full individual filing fee or submit an individual <u>in</u> <u>forma</u> <u>pauperis</u> application and authorization form.

By Memorandum and Order dated September 5, 2012, a motion to dismiss filed by SCI-Huntingdon Medical Director Phillip Shoaf, D.O. was granted. <u>See</u> Doc. 38. Remaining Defendants are Secretary Jeffrey Beard of the Pennsylvania Department of Corrections (DOC) as well as the following SCI-Huntingdon officials: Superintendent

1

R. Lawler; Unit Managers J. Hollibaugh and J. Spyker;; Safety Manager B. M. Ewell; Kitchen Supervisor Herve Glorioso, Health Care Administrator Mary Showalter, and Utilities Manager Curtis Williams.

The two remaining Plaintiffs allege that they were subjected to "overcrowded, dilapidated and unsanitary" conditions of confinement.  See Doc. 1, ¶ IV.  Remaining Plaintiffs describe their SCI-Huntingdon housing unit as being infested with vermin and birds (due to a lack of screens on windows), as well as having inadequate ventilation, fire safety violations, unsafe powerhouse emissions, poor plumbing which has led to a contaminated water supply, and lacking covers for radiators and sufficient yard space. They next claim that prisoners are not screened before being double celled together.[1]

The Complaint additionally contends that prison's kitchen and showers are unsanitary and prisoners are not provided with needed medical and psychiatric treatment.  See id.  It is further asserted that Defendants were aware of those deficient conditions and failed to initiate corrective measures.  In addition to asserting § 1983 claims, the Complaint also maintains that Defendants' alleged actions constituted tortious conduct under Pennsylvania state law.  See Doc. 1, p. 12, Count 3.  Remaining Plaintiffs seek injunctive relief and monetary damages.

Presently pending is Remaining Defendants' motion to dismiss.  See Doc. 27.  Neither Plaintiff has filed a response to

---

1.  It is also alleged that there is impermissible double celling.

the motion nor sought an enlargement of time in which to do so. Accordingly, the motion to dismiss will be deemed unopposed.

## Discussion

Remaining Defendants argues that they are entitled to entry of dismissal on the grounds that: (1) the Complaint to the extent that it raises claims for monetary damages against Defendants in their official capacities is barred by the Eleventh Amendment; (2) Plaintiffs did not exhaust their administrative remedies; (3) any attempt to establish liability against Defendants Beard and Lawler solely based on a theory of respondeat superior is insufficient; (4) there is no viable claim of deliberate indifference to a serious medical need; and (5) any pendent state law tort claims are barred by sovereign immunity. See Doc. 28, pp. 7-8.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

        "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Eleventh Amendment**

Defendants' initial argument contends that Plaintiff's action to the extent that it raises claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment. <u>See</u> Doc. 28, p. 14.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities. <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996); <u>Chinchello v. Fenton</u>, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." <u>Germosen v. Reno</u>, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.). Therefore, entry of summary judgment in favor of the Defendants is appropriate to the extent that the Complaint asserts <u>Bivens</u> claims against them in their official capacities.

**Administrative Exhaustion**

Remaining Defendants next contend that Plaintiffs failed to exhaust their administrative remedies prior to filing this suit. <u>See</u> Doc. 28, p. 13. Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility

5

until such administrative remedies as are
available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

6

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." <u>Id</u>. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." <u>Id</u>.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. <u>Brown v. Croak</u>, 312 F.3d 109, 112 (3d cir. 2002) (citing <u>Nyhuis</u>, 204 F.3d at 75.  A more recent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. <u>Hill v. Smith</u>, 186 Fed.  Appx. 271, 274 (3d Cir.  2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007); <u>see</u> <u>also Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in <u>Williams v. Runyon</u>, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense

of non-exhaustion to plead and prove it.[2]  Consequently, any

failure by Remaining Plaintiffs to allege or establish compliance

with the exhaustion requirement is not by itself a sufficient basis

for entry of dismissal under the criteria established in Jones and

Williams.

The Pennsylvania Department of Corrections ("DOC") has

established a Consolidated Inmate Grievance Review System which has

been periodically amended.  Section V of DC-ADM 804 (effective

December 8, 2010) states that "every individual committed to its

custody shall have access to a formal procedure through which to

seek the resolution of problems or other issues of concern arising

during the course of confinement."  See Doc. 29, p. 8.  It adds

that the formal procedure shall be known as the Inmate Grievance

System and provides a forum of review and two (2) avenues of

appeal.  Section VI ("Procedures") of DC-ADM 804 provides that,

after attempted informal resolution of the problem, a written

grievance may be submitted to the Facility Grievance Coordinator

within fifteen (15) working days after the events upon which the

claims are based, but allowances of extensions of time will be

granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review

decision may be made in writing within ten (10) working days to the

Facility Manager or Superintendent.  A final written appeal may be

---

2.   In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the
United States Court of Appeals for the Third Circuit similarly
stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

Remaining Defendants state that "[n]either Plaintiff filed any grievances, including rejected grievances, to Final Review in accordance with the procedural requirements of the DC-ADM 804 related to the allegations in the Complaint."  Doc. 28, p. 13.  In support of their argument, they have submitted a declaration under penalty of perjury by SOIGA Chief Grievance Officer Dorina Varner.  See Doc. 29, Exhibit A.  Varner states that based upon a review of Brown and Johnson's grievance records, neither Plaintiff filed any grievances, including rejected grievances, to final administrative review regarding the claims asserted in this action.  See id. at ¶ 8.

Specifically, Varner acknowledges that Plaintiff Johnson filed Grievance No. 364296 on May 7, 2011 complaining of a lack of water pressure and having a piece of paper in a cup of water.  The grievance which was addressed by the Grievance officer as being unconfirmed was not appealed to the Superintendent.

Grievance No. 309382 filed on March 2, 2010 by Johnson contained complaints about many of the alleged conditions which are the subject of this action.  Varner asserts that the grievance was

rejected and then appealed to the Superintendent who affirmed the rejection.  However, no further administrative appeal was taken.

Although Varner maintains that Plaintiff Brown did not initiate any grievances regarding the conditions underlying this action, a copy of March 5, 2010 inmate request by Brown accompanying Varner's declaration indicates that he filed grievances regarding his medical treatment and the conditions of his confinement, issues which are plausibly related to his pending claims which were rejected by the prison's Grievance Coordinator. See id. at p. 38.

Although Remaining Defendants make a compelling, unopposed argument for dismissal on the basis of non-exhaustion they have done so by filing a motion to dismiss.  As previously noted, failure to exhaust is an affirmative defense and an inmate plaintiff is not required to demonstrate exhaustion in his complaint.  Granting a failure to exhaust argument raised via a motion to dismiss is only appropriate where the face of the pleadings demonstrate non-exhaustion (i.e. the complaint concedes non-exhaustion.)  See Ball v. SCI Muncy, 2010 WL 2600728 (3d Cir. June 30, 2010).  There is no such concession in the pending Complaint, on the contrary Remaining Plaintiffs indicate that they completed exhaustion.

Since the pending non-exhaustion argument is premised on Varner's declaration and accompanying grievance copies which were not attached to nor referred to in the Complaint, the non-exhaustion argument is not properly asserted via a motion to

dismiss and cannot be granted.  See King v. Doe, 2011 WL 2669221
*3-4 (D. Del. July 6, 2011).

**Respondeat Superior**

        The next argument for dismissal contends that any attempt by
Plaintiffs to establish liability against ex-Secretary Beard and
former SCI-Huntingdon Superintendent Lawler solely basis upon their
respective supervisory capacities is improper.  See Doc. 28, p. 14.

        A plaintiff, in order to state an actionable civil rights
claim, must plead two essential elements:  (1) that the conduct
complained of was committed by a person acting under color of  law,
and (2) that said conduct deprived the plaintiff of a right,
privilege, or immunity secured by the Constitution or laws of the
United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638
(3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-
42 (3d Cir. 1990).

        Civil rights claims cannot be premised on a theory of
respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207
(3d Cir. 1988).  Rather, each named defendant must be shown, via
the complaint's allegations, to have been personally involved in
the events or occurrences which underlie a claim.  See Rizzo v.
Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials,
546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

                A defendant in a civil rights action must have
                personal involvement in the alleged wrongs. . .
                .  [P]ersonal involvement can be shown through
                allegations of personal direction or of actual
                knowledge and acquiescence.  Allegations of
                participation or actual knowledge and
                acquiescence, however, must be made with
                appropriate particularity.

                                11

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by a prisoner o establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

12

Based upon an application of the standards announced in <u>Rode</u> and <u>Hampton</u>, Plaintiffs' action to the extent that it seeks to establish liability against Defendants Beard and Lawler solely based upon their respective supervisory capacities within the DOC cannot proceed.  Such <u>respondeat</u> <u>superior</u> type assertions are simply insufficient for establishing civil rights liability.[3] Likewise, any attempt by Plaintiffs to set forth a claim against those two Defendants solely based upon their responses to administrative grievances which they submitted is equally inadequate under <u>Flick</u> and <u>Alexander</u>.

However, Plaintiffs' claims that there were glaring, severe unconstitutional conditions of confinement existing at SCI-Huntingdon when it was under the supervision of Superintendent Lawler.  Given the nature of the allegations of widespread, obvious inadequate conditions asserted in the Complaint and the liberal treatment afforded <u>pro</u> se allegations, Plaintiffs have sufficiently alleges personal involvement by Lawler in unconstitutional conduct.  Since there are no allegations of personal knowledge or involvement by ex-Secretary Beard, his request for dismissal will be granted.  However, the request for dismissal on the basis of lack of personal involvement will be denied in regards to ex-Superintendent Lawler.

---

3.    Furthermore, Plaintiff's bald assertion that congressional testimony given by Lappin can serve as a basis for a claim of deliberate indifference to his personal medical needs is insufficient.

**Medical Treatment**

Remaining Plaintiffs vaguely allege that they have had a problem with medical treatment.  They generally note add that the medical and psychiatric treatment provided at the prison is "shockingly deficient."  Doc. 1, p. 8, ¶ 16.  It is also generally alleged that there are some cases where some prisoners have been given wrong medication, there were delays in treatment, and a lack of mental health care

Defendants contend that because there are no facts asserted in the Complaint to show that Remaining Plaintiffs either had serious medical needs or that any needed treatment was delayed or denied, a viable Eighth Amendment claim has not been asserted.  See Doc. 28, p. 20.  As previously noted, this argument is unopposed.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir.  2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v.

14

Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true,

however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.;  Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

With respect to the serious medical need prong of Estelle, and as previously concluded by this Court's September 5, 2012 Memorandum and Order, neither of the Remaining Plaintiffs has adequately identified any serious medical need.  Johnson and Brown do not provide any description whatsoever of their respective medical conditions or indicate what if any, medical problems they have.  The Complaint contains only a brief assertion that both Remaining Plaintiffs had a problem with medical treatment.  As recently stated by our September 5, 2012 Memorandum and Order, this vague totally unsupported contention is simply insufficient for establishing that either Johnson or Brown had a serious medical need as mandated by Estelle.

In regards to the subjective deliberate indifference component, there are no allegations set forth that any of the Remaining Defendants was responsible for any denial or delay in any medical treatment which they required.  Accordingly, the unopposed

16

request for dismissal with respect to Plaintiffs' Eighth Amendment deliberate indifference to medical needs claims.[4]

## Pendent Jurisdiction

Remaining Defendants also request that this Court decline supplemental jurisdiction over Plaintiffs' pendent state law tortious conduct claims because they are barred by the doctrine of sovereign immunity.  See Doc. 28, p. 21.  As previously discussed, this argument is unopposed.

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3) (1997).  Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a

---

4.  In light of this Court's conclusion, dismissal will be entered in favor of Defendant Health Care Administrator Showlater.

district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Due to the Court's concerns expressed herein regarding the question of exhaustion of administrative remedies, a threshold issue with respect to Plaintiffs' federal claims, a decision as to whether jurisdiction will be accepted with respect to any pendent state law claims will be held in abeyance.  Accordingly, Remaining Defendants' argument that Johnson and Brown's state law claims are barred by sovereign immunity will be dismissed without prejudice and may be asserted if Remaining Defendants elect to seek summary judgment.  An appropriate Order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 17, 2012

18