IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES JOHNSON, ET AL.,

    Plaintiffs

v.

B. HOLLIBAUGH, ET AL.,

    Defendants

CIVIL NO. 3:CV-11-565

(Judge Conaboy)

FILED
SCRANTON

DEC 0 9 2013

PER ___CT___
DEPUTY CLERK

## MEMORANDUM

### Background

This <u>pro se</u> civil rights action was filed by Charles Johnson, Robert Kane, and Donald Brown (Plaintiffs) regarding their mutual confinement at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon).

By Order dated October 13, 2011, Kane's incomplete <u>in forma pauperis</u> application was denied and his claims were dismissed without prejudice.[1] See Doc. 19. A Memorandum and Order dated September 5, 2012, granted a motion to dismiss filed by SCI-Huntingdon Medical Director Phillip Shoaf, D.O. See Doc. 38.

By Memorandum and Order dated September 18, 2012, Remaining Defendants' unopposed motion to dismiss Plaintiffs' Complaint was partially granted. See Docs. 39 & 40. Specifically, dismissal was granted with respect to: (1) the claims for monetary damages against Remaining Defendants in their official capacities; (2)

---

1. The Order also dismissed without prejudice a motion for joinder submitted by Inmate Thomas J. Martin.

1

Plaintiffs' action to the extent that it sought to establish liability against Defendants Beard and Lawler solely based upon their respective supervisory capacities; and (3) the Eighth Amendment claims of deliberate indifference to medical needs. In addition, dismissal was entered in favor of Defendants Jeffrey Beard and Mary Showalter.

Finally, the Memorandum and Order noted that the arguments for dismissal of the federal claims on the basis of non-exhaustion and of the state claims on the grounds of sovereign immunity were dismissed without prejudice and could be reasserted in a summary judgment motion.

Remaining Defendants are the following SCI-Huntingdon officials: Superintendent R. Lawler; Unit Managers J. Hollibaugh and J. Spyker;; Safety Manager B. M. Ewell; Kitchen Supervisor Herve Glorioso, and Utilities Manager Curtis Williams. The two Remaining Plaintiffs allege that they were subjected to "overcrowded, dilapidated and unsanitary" conditions of confinement. See Doc. 1, ¶ IV. The Complaint describes Johnson and Brown's SCI-Huntingdon housing unit as being infested with vermin and birds (due to a lack of screens on windows), as well as having inadequate ventilation, fire safety violations, unsafe powerhouse emissions, poor plumbing which has led to a contaminated water supply, a lack of radiator covers, unsanitary kitchen and showers, and insufficient yard space.

Remaining Plaintiffs additionally contend that SCI-Huntingdon prisoners are not screened before being double celled

2

together.² It is further asserted that Defendants were aware of those deficient conditions and failed to initiate corrective measures. In addition to asserting § 1983 claims, the Complaint also maintains that Remaining Defendants' alleged actions constituted tortious conduct under Pennsylvania state law. See Doc. 1, p. 12, Count 3. The Complaint seeks injunctive relief and monetary damages.

Presently pending is Remaining Defendants' motion seeking entry of summary judgment. See Doc. 49. Although Plaintiff Brown was granted an enlargement of time in which to do so,³ neither Plaintiff has filed a response to the summary judgment motion. Accordingly, the motion for summary judgment will be deemed unopposed.

## Discussion

Remaining Defendants' pending motion solely argues that they are entitled to entry of summary judgment on the grounds that Remaining Plaintiffs did not exhaust their administrative remedies prior to filing this action. See Doc. 51, p. 3.

## Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ.

---

2. It is also alleged that there is impermissible double celling.
3. See Doc. 58.

3

P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence

4

- regardless of whether it is direct or circumstantial - must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Exhaustion**

The sole summary judgment argument raised by Remaining Defendants is that Plaintiffs Brown and Johnson failed to exhaust their administrative remedies prior to filing this suit. See Doc. 51, p. 5. As noted earlier, this argument is unopposed.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As previously discussed by this Court's September 18, 2012 Memorandum and Order, § 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims seeking monetary damages are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).

If a prisoner fails to exhaust his available administrative remedies before bringing a civil rights action, dismissal of his or her claim is appropriate. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing

5

suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

In Jones v. Bock, 127 S.Ct. 910, 923 (2007), the United States Supreme Court stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. This administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002)

6

(citing Nyhuis, 204 F.3d at 75. A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[4] Consequently, any failure by Plaintiffs Johnson and Brown to allege or establish compliance with the exhaustion requirement in their Complaintis not by itself a sufficient basis for entry of dismissal under the criteria established in Jones and Williams.

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[5] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems

---

4. In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

5. The DOC's grievance system has been periodically amended.

7

or other issues of concern arising during the course of confinement." See Doc. 29, p. 8. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

Remaining Defendants state that "Plaintiff Johnson did not file any grievances, including rejected grievances to Final Review" with respect to the pending claims of being subjected to unconstitutional conditions of confinement. Doc. 51, p. 8.

With respect to Plaintiff Brown, it is asserted that said inmate filed only two (2) grievances during the relevant time

8

period both of which were rejected and not appealed to final review.[6]

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration under penalty of perjury by SOIGA Chief Grievance Officer Dorina Varner. See Doc. 53-1, Exhibit A. Varner states that based upon her review of Johnson's institutional grievance records, that Plaintiff did not file any grievances, including rejected grievances, to final administrative review regarding the allegations in the Complaint. See id. at ¶ 8.

Varner does acknowledge that Plaintiff Johnson filed Grievance No. 364296 on May 7, 2011 complaining of a lack of water pressure and having a piece of paper in a cup of water. This grievance, which was addressed by the assigned Grievance Officer as being unconfirmed, was not appealed to the Superintendent.

It is also admitted that Johnson initiated Grievance No. 309382 filed on March 2, 2010. This grievance included complaints about many of the alleged conditions (poor sanitation in the shower room, rampant pest, leaking, pipes, and poor food) which are the subject of this action. See id. at ¶ 10. Varner asserts that the grievance was rejected and then appealed to the SCI-Huntingdon Superintendent Lawler who affirmed the rejection. However, no further administrative appeal to final review was taken. Based upon the above, Varner concludes that Johnson failed to satisfy the

---

6. It is acknowledged that after the filing of this action, Brown filed a grievance to final review. However, the grievance did not pertain to the claims pending before this Court.

9

administrative exhaustion requirement with respect to any of the claims pending before this Court. See id. at ¶ 14.

Varner's declaration does not address the issue of whether Plaintiff Brown initiated any grievances regarding the conditions underlying this action. However, attached to her declaration is a copy of March 15, 2010 inmate request by Brown (Doc. 53-1, p. 36) which indicates that said prisoner filed grievances on March 2, 2010 and March 7, 2010 regarding the conditions of his confinement, issues which are plausibly related to his pending claims which were rejected by the prison's Grievance Coordinator.

Also submitted is a declaration under penalty of perjury by SCI-Huntingdon Grievance Coordinator Connie Green. See Doc. 53-2, Exhibit B. Green states that based upon her review of the grievance records for Plaintiff Brown, Brown filed two grievances, Nos. 309402 and 309403 between March 1, 2010 and March 15, 2010 (the period referenced by Brown's above described March 15, 2010 inmate request).[7] Green states that both grievances were rejected and not appealed to final review. See id. at ¶ 8. Moreover, Green asserts that the only grievance filed by Brown to final administrative review was initiated on February 29, 2012 and pertained to a February 27, 2012 vehicular accident. See id. at ¶ 11.

As previously mentioned, the United States Supreme Court has recognized that prisoners must comply with the grievance system's

---

7. Grievance 309402 regards a co-payment for medical services and as such is not related to the conditions of confinement claims before this Court. See id. at p. 7.

10

procedural rules. <u>Woodford</u>, 548 U.S. at 93. Remaining Defendants have satisfied their burden of demonstrating that Plaintiffs Johnson and Brown never pursued administrative relief to final administrative review regarding their pending claims of being subjected to unconstitutional conditions of confinement. Since the undisputed record supports the conclusion that Plaintiffs could have initiated final grievance appeals to SOIGA, but failed to do so, the Remaining Defendants' unopposed motion for summary judgment will be granted.

**Pendent Jurisdiction**

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>see</u> also <u>Aldinger v. Howard</u>, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction. <u>See</u> 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. <u>New Rock Asset Partners v. Preferred Entity Advancements</u>, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. <u>Id</u>. (citing <u>Lentino v. Fringe Emp. Plans, Inc.</u>, 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a

11

district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Since this Court has dismissed the federal claims against the Remaining Defendants, jurisdiction will be declined with respect to any pendent state law claims that Plaintiffs Johnson and Brown wish to pursue An appropriate Order will enter.

*signature*
RICHARD P. CONABOY
United States District Judge

DATED: DECEMBER 4, 2013